## Towne Estate

*High, Swartz, Flynn & Roberts*, for accountant.

FORREST, J. (thirty-eighth judicial district, specially presiding), December 8, 1950.—William E. Towne died on April 28, 1912, leaving a last will and testament bearing date September 11, 1911, probated on April 29, 1912, wherein and whereby he provided, inter alia, as follows:

"Fifteenth. I give and bequeath to Jenkintown Trust the sum of Three thousand five hundred dollars, in trust, nevertheless, for the following uses and purposes only to wit: to hold the said sum as a trust fund and after deducting all necessary expenses and a commission of not over five per cent. for its services to apply the income therefrom to the following purposes forever, to wit: First, in furnishing an ample supply of water to the drinking fountain which I recently erected at the intersection of Summit Avenue and Township Line near Jenkintown Station, Pennsylvania, in memory of my dear sister, Rosa M. Towne; and second, in keeping the said fountain and its surroundings in good condition and repair. If in any one year the income accruing from the said trust fund during that year is more than sufficient to fully and adequately carry out the foregoing directions I direct that at the end of each year the said Trust Company shall pay over any income which has not been needed for that purpose to the Montgomery County Branch of the Women's Pennsylvania Society for the Prevention of Cruelty to Animals to use for the general work of the said Branch.

"Sixteenth. I give and bequeath to the Montgomery County Branch of the Women's Pennsylvania Society for the Prevention of Cruelty to Animals the sum of Four thousand dollars, in trust, to hold the same as a trust fund and to use the income therefrom for the general work of the said Branch, provided, however, that if the fund which I have already established by the Fifteenth provision of this my Will is not sufficient to provide for the maintenance and care of the drinking fountain therein referred to, I direct that the said Montgomery County Branch of the Women's Pennsylvania Society for the Prevention of Cruelty to Animals shall use a sufficient part or all of the income of the fund created by this bequest to it for the purpose

of maintaining the said fountain in good order and condition, and shall use only the remaining portion of the income for the general work of the Society."

Jenkintown Trust Company, the trustee, received the corpus of the trust, under the fifteenth item of the will, in the sum of $3,500, by award of June 15, 1913. The corporate title of the company was afterward changed to Jenkintown Bank and Trust Company. The award is the subject of the account now before the court, which was filed on October 3, 1950.

The account shows a balance of principal of the trust of $3,717.46, which is embraced in the bonds and shares of stock set forth on the summary totaling $3,724.50; and a balance of income for distribution of $1.52.

The reason or purpose of the filing of the account now before the court is that the purpose for which the trust was created has ceased because of: (1) The income being insufficient to maintain the fountain and keep it in repair; (2) the refusal of the Montgomery County Branch of the Women's Pennsylvania Society for the Prevention of Cruelty to Animals to contribute any funds to supplement the income necessary to maintain the fountain; (3) the fountain, which is designed for the comfort of horses and dogs, actually serves no one, because there are no horses using the highways in the Borough of Jenkintown and dogs are prohibited from wandering at large.

The trustee, in its petition for adjudication, suggests that the trust be terminated and that sufficient of the principal be used to remove the fountain and that the balance remaining be awarded to the Montgomery County Branch of the Women's Pennsylvania Society for the Prevention of Cruelty to Animals.

The doctrine of cy pres under the Act of April 26, 1855, P. L. 328, as amended by the Act of May 23, 1895, P. L. 114, 10 PS §13, is that "no disposition of property . . . made for any . . . charitable . . . use shall

fail . . . by reason of the objects . . . ceasing, . . . but it shall be the duty of . . . court having equity jurisdiction . . . by its decrees to carry into effect the intent of the donor . . . so far as the same can be ascertained and carried into effect consistently with law or equity. . . ." "Thus, when a definite function or duty is to be performed, and it cannot be done in exact conformity with the plan of the donors, it must be performed with as close approximation to that plan as reasonably practical": Connors et al. v. Ahearn et al., 342 Pa. 5, 7 (1941).

The question here presents itself whether a trust having for its purpose the comfort of animals is a charitable trust. In 3 Scott, Trusts §374.2 (1939), it is said:

"A trust to prevent or alleviate the suffering of animals is charitable. The courts have sometimes emphasized the benefit to the human beings in the community who would either suffer in seeing animals suffer or would be degraded if they did not suffer in seeing animals suffer. It is quite sufficient, however, that the animals are protected from suffering or that their sufferings are diminished. The purpose was not one of those mentioned in the Statute of Charitable Uses, and perhaps in the time of Elizabeth there was no general sentiment against causing animals to suffer. Today, at any rate, the purpose is recognized as one in which the community has an interest."

In 3 Scott, Trusts §399.3 (1939), it is stated that:

". . . where at the time of the creation of the trust it is possible and practicable to carry out the specific directions of the testator, but in course of time conditions change so that it becomes impossible or impracticable to carry out these directions, the *cy pres* doctrine is almost invariably applied, . . ."

Under the foregoing facts and the law applicable to them I am of the opinion that the doctrine should be

applied in this case. I cannot, however, agree that the trust should be stricken down. The substitute plan which would most nearly approximate the carrying out of testator's intention is that the trust be continued and that the income be paid to the Montgomery County Branch of the Women's Pennsylvania Society for the Prevention of Cruelty to Animals, to be used for the general work of the branch, and I direct that this be done. If it shall be determined that the legal duty rests upon the trustee to bear the cost, or part thereof, for removal of the fountain, such cost shall be paid out of the income and, if the income on hand be insufficient for the purpose, the balance of the cost may be advanced out of the principal and be recouped out of subsequently accruing income. The net ascertained balances of principal and income of the trust are awarded back to the accountant for the carrying out of these purposes. . . .

And now, December 8, 1950, this adjudication is confirmed nisi.